We now have two consolidated appeals in United States v. Mabie. Congratulations, Mr. Pat. Thank you. I asked for them all on the same day, so I don't have anybody's point. Your Honor, if I could, I'd like to use my time first to talk about the 404B issue in the threat case, then talk about the denial of pro se and stuff in the assault case. We consolidated them precisely so that you could then choose how best to use your time. In the threat case, the judge never made a proper ruling on the government's proposed 404B evidence. He, in fact, reversed the process by which he is supposed to or was supposed to analyze the government's proposed 404B evidence by putting the burden on Mr. Mabie. Once Mr. Mabie said, I object to this coming in, the district judge then said that Mr. Mabie did not properly explain why the 404B evidence was not admissible, rather than saying this is how the government has met its burden that this court laid out in Gomez to showing why the 404B evidence was admissible. And what was in particular, specifically lacking, was the chain of reasoning as to how the evidence was relevant without relying on the improper propensity. Nowhere did the government do that in their written materials. They didn't do it before Judge Reagan at the hearing. They just said we're going to rely on our written materials. And when Mr. Mabie objected at trial, raised 404B objections at trial, the government never said this is how it is relevant. Now, in the written materials, they listed out a bunch of 404B purposes, but that doesn't satisfy the Gomez test. And they said, well, here's the purposes, and we're not putting it in for propensity. We're putting it in for these purposes. But the whole reason Gomez has this requirement that you have to, the proponent of the evidence has to lay out the chain of reasoning, is to basically put your money where your mouth is. Explain to me how you are going to use this in a way that doesn't rely on propensity. Does he suffer any ill consequences if he doesn't ask the judge to do that? If Mr. Mabie does not object at all to the evidence. Not object. Say, judge, would you explain it? No. What about the Lawson case? Lawson case, I would submit to you, Judge, is not remotely on point. Lawson, the judge, with the consent of the parties, conducted the hearing on the 404B evidence off the record. And then came back on the record and said, my ruling is it's coming in. But did not give his reasoning. And the defendant didn't say, Judge, could you explain your reasoning so that it's there. Everything was done on the record in this case. There was a written submission, and then there was a hearing where Mr. Mabie made the argument. And, in fact, the judge then issued his opinion like six days later, saying, well, you didn't make specific enough objections, so I'm letting it in. Now, then the judge said, well, Mr. Mabie, at the beginning of the trial, he said, you can still raise specific objections. And so Mr. Mabie did that, even when he was the first day, when he was going pro se. For example, when the police officer Winstrom testified, he was the first government witness. He was the guy that investigated the burglary. When he tried to get in this letter that Mr. Mabie had written, after the threatening letters, the charged letters, Mr. Mabie argued relevance and it's prejudicial. The government said it's 404B, and its purpose is to show a pattern of threats. And the judge said, OK. I mean, to show a pattern of threats is saying we're using it for propensity. Because he has a pattern of threatening people, that means that the charged letters are threats. And that's the way the 404B evidence got used. The email, the voicemails of DEBA, when the government went to play those at trial, Mr. Mabie specifically objected, says it seems like rule 404B evidence to me. And the district judge said no, even though it was in the government's 404B notice. He somehow said it goes directly to whether these are threats. And after the voicemails were put in, the government was then allowed to have DEBA testify, I saw these as threats. So not just to get context. You don't need DEBA's characterization of these as threats to get any kind of context. And by the way, you don't need all of these things in verbatim from Winstrom, from DEBA, the statement to Officer Klein, the statement to Anderson, the statement to Brooks. You don't have to get verbatim all of these things in to give the jury enough context from which to understand the case. And so even if some of this evidence would have been admissible under rule 404B, not all of it is necessarily admissible. And if the judge had done the proper GOMEZ and done the proper, which includes doing a 403 balance, you could then at least have something to review. Because here you don't even have anything from the district judge to review. Well, the GOMEZ issue was thoroughly aired. I mean, the case was clearly on the court's mind, and it was briefed thoroughly. I would dispute that it was briefed thoroughly, even from the government side, because if you look at the government's brief and its docket entry, I believe 106, it cites GOMEZ, but it never then says, okay, pursuant to GOMEZ, here is the chain of inferences through which we're going to establish that this, for very odd reasons, they continued to brief it under the similarity rules and stuff that GOMEZ rejected. Why isn't this just part of the context of the charged crime? I mean, the charged threats, those communications are obscure without this background. Well, that's part of the reason. Or the meaning of them is obscure without the background. So why is this 404B at all? The course of conduct that's charged here is that this guy had a motive to threaten these people, stemming from the burglary that resulted in the theft of his tools and the failure to adequately investigate it, or his idea that there had been a failure to adequately investigate it, and none of that made sense. I mean, the charged communications don't make sense as a threat unless this background evidence is before the jury. Two things on that. Number one, that shows how important this 404B evidence was. Right, but it's context. It's not 404B. It's just part of the course of conduct that underlies the charged threats. It's not part of the same course of conduct unless you're going to say the conduct from 08 is all part of the same conduct. It's a longstanding grudge. That it is. And I fully admit that the government should have been allowed to put in some evidence, put in evidence about the burglary. For example, Winstrom, 99% of his testimony was all right because he's just testifying about the burglary and the investigation. But there's no need. The letter to Winstrom, calling Winstrom vile names and stuff like that, it mentions DEBA once, doesn't contain any threat towards DEBA or anything. That doesn't have to. That is 404B evidence. That's not part of the course of conduct because that letter was written after the threatened letters and not to the people that were threatened in the charged letters. So that is 404B evidence. There's no reason to put that in other than to establish, which is exactly what they did, is they put the letter in and said, Officer Winstrom, how do you interpret that? It's a threat. So it's, oh, and when the government gets asked, why are you putting this into evidence? It shows a pattern of threats. That is propensity. That's not context. Why doesn't it go to how the victims perceived it, which is relevant evidence of a true threat? Well, Winstrom's couldn't have possibly have done that because, again, it was mailed after the charged letter, so it couldn't have had any impact on how the victims interpreted the charged letters because it's post-dated and there's no evidence they even knew about it. But had the judge done a proper 404B analysis so that you had that to review, then I can understand the question of, well, all right, some of this could have been proper for context, some of it could have been proper for knowledge, although how it shows absence of mistake, I'm not quite sure how absence of mistake is. Well, the judge did, there was an instruction in this case that said don't consider it for propensity? Yes, there was a limiting instruction. But I'm not aware of any case that says that a proper limiting instruction cures the error of improperly introducing the 404B evidence in the first place. And it was the lack of any ruling. And the district judge, and I do think this is critical, and the district judge really says this explicitly in his order, he flips the burden to Mr. Maybe to say tell me why this isn't admissible, not just in a Socratic method when you're having a hearing so you can try and understand the arguments better, but in his actual ruling he says, well, you didn't make a specific enough objection as to why this isn't admissible under 404B, therefore I'm letting it in. Saying nothing, he never says, I looked at the arguments in the government's brief as to why they say it's admissible, I find that those are proper and I adopt them. He does not say that. He never says that. He says I'm not ruling on this because Mr. Maybe did not make a specific enough objection. And so therefore you don't have a proper evidentiary ruling to review, even if you de novo could sit here and say I can think of some ways that maybe it would have been admissible. That's not the way it's supposed to work. If I could move on to the assault case. Judge Mills erred when he did not even consider Mr. Maybe's request to proceed pro se. Now, the pro se request at issue here was made after. He fixed that, though, didn't he? Excuse me? He said he fixed that, didn't he? Mr. Maybe? Yeah. Well, he was not allowed to go pro se. He was represented by counsel through the whole rest of the trial. Well, he wasn't in the courtroom. He was not. And that is a rather bizarre exchange. But as far as the pro se request, while it's reviewed for an abuse of discretion, abuse of discretion means there has to have been an exercise of discretion. And all Judge Mills said was I don't care what you're talking about. I don't care about your reasoning. He said we tried to bend over backwards to accommodate you and all we get is difficulty. Anytime things aren't going exactly as you want, you throw a tantrum and you fire your counsel. The problem is none of that had happened before. Mr. Maybe started off pro se and conducted himself perfectly well. No problems. He had two hearings in front of the judge. They had no fighting, nothing inappropriate. The only reason he gave up his pro se status is because the county jail wouldn't let him have a computer or DVD player in which to review the discovery, some of which was recordings that were on DVD. And then he lost that benefit when trial counsel said he wasn't going to play these calls for him and said if he didn't like it, he could ask the judge to go pro se. So Mr. Maybe asked to go pro se. But at no time had Mr. Maybe thrown a fit in front of the judge to try and get rid of counsel. Requiring Mr. Maybe to remain present in the courtroom, every constitutional right is waivable, much to the chagrin of most of my clients who give statements to the government when they're in custody. It is always consistently you have the right, a defendant has the right to waive their constitutional rights. And to not allow him to absent himself from the courtroom when he requested, outside of the presence of the jury, not causing any disruption to the trial with the jury being present, was an absolute abuse of discretion. And there's no explanation of why it wasn't proper for him to, or wasn't permissible for him to waive his right to be present on the first day where they said, nope, you have to be here. But then on the second day, they said, do you want to be present? And he said, nope, I don't want to be present. And they said, okay, go back to the jail cell. That should have been what happened on the first day. And then Mr. Maybe would not have suffered that prejudice. Finally, with regard to the sentencing, and I would submit, in our reply brief we set out how the grouping rules would have worked and the sentencing range he would have looked at if he would have been sentenced at the same time for these offenses under the grouping rules. And his guideline range would have been 84 to 105 months if this was, if both cases were sentenced at the same time. He got 21 years combined. And that is a massive variance. Judge Reagan maxed him. I mean, literally gave him the maximum sentence. And Judge Reagan did that to a large extent for the very reason that they brought Berry in to testify at that sentencing. The judge found him credible, found that the assault happened, said that part of the reason I'm giving a higher sentence is because you've now progressed to instead of just threats, now there's an actual altercation. So they get the max sentence that Judge Reagan called a breathtaking variance because of the assault, then turn around, get a conviction on the assault, and get six more years consecutive. And even if you would have found that the statutory maximum sentence in the threat case was reasonable, though I would dispute that. But even if you would say, fine, he had a long history with the Divas, and then he has this assault on Berry, combining those two, then going and getting the assault conviction against Berry, and getting an additional six years consecutive to the assault case for the exact same conduct resulted in an aggregate sentence that is unreasonable. I reserve the balance of my time to everybody. Thank you. Mr. Patton. Mr. Clark. Good morning, Your Honors. With respect to the first issue, Judge Connolly asked if the defendant had suffered any ill consequences by the judge not providing any explanation. I believe my opponent said no in oral argument here today. And so my question is, why are we here? I don't think that he did suffer any consequences by not having this explanation from the judge. But I'd like to turn back to the first part of that argument, which relates to when Mr. Shatnick took over. At that time, Mr. Shatnick knew that the government had and would introduce or try to introduce significant amounts of 404B evidence. At that time, he could have asked the judge to explain, to give his explanations for his probity prejudice analysis, but he did not. It's clear from the record that the judge would have been amenable to such a request. And so that's why the government says that there is a waiver here under Lawson. He could have raised that matter, but he did not. Furthermore, as I said before, he suffered no prejudice, so I don't believe there has been any error here. Judge Sykes, you asked why is this not, why is this 404B evidence at all? And I think part of my reply would be that we used to have a doctrine that allowed evidence in relating to inextricably intertwined evidence, but the court has abandoned that rule in favor of 404B analysis. I would actually agree with you that it seems to me that it really is part of the charge here. These threats are building over time, and it really is part of the charge, and it goes to a number of things regarding true threats, like obviously the intent of the defendant, as well as the determination of objective reasonableness that is required for a true threat. My opponent has brought up several things about particular items of evidence today, calling them overly prejudicial and particularly the Winstrom matter, but that was not his argument in his brief. His argument was that he didn't, the judge didn't provide an adequate explanation for his reasons for allowing the evidence in. The evidence regarding Winstrom, by the way, the judge did allow it in, in reference to some handwriting that had been established, and at the beginning stages of the trial, we needed to establish that, of course, Mr. Mabee was the author of these letters, and we didn't know that later on he would take the stand and admit that he did. So we provided several witnesses who did discuss the handwriting, and Judge Sykes, as you suggested, there was some reason there to, although I don't think that it got developed at trial, there is some reason that we had there for using the information from that letter to suggest that it was, in fact, objectively reasonable to consider this as a threat, that is the charge letters as threats, because here you have another letter of similar handwriting, but also similar verbiage, and you have yet another person receiving letters about, more or less about the same incident, who also perceived these letters as, the particular letter to him as a threat. Right, because the language of the charged communications, to someone not familiar with the context, to someone not familiar with the context, the language of the charged communications doesn't make a whole lot of sense, and so there's this background context that's necessary to supply an explanation for why the charged communications constituted threat, or at least to evaluate that question under the relevant legal standard. Exactly, and that's why the government felt that it had to put on the amount of 404B evidence that it did. Right, and the interment of the inextricably intertwined doctrine doesn't mean that context evidence is out the window. It's clearly part of the evidentiary background of the case. Okay, very well. All right, so turning then to the sentence that the defendant received, I believe that the judge's comment was that this was a breathtaking sentence for a breathtaking threat to society, and the evidence that was presented at sentencing and before is such that the breathtaking sentence was in fact justified. It was a reasonable sentence under the circumstances. The judge filed a 21-page memorandum explaining his reasons. Those were deterrence, punishment, and protecting the public, the egregious nature of the offenses, no remorse by the defendant. He was capable of carrying out his threats. He was likely to recidivate his outrageous behavior. He did not retract the comment that he had made about dragging Marshall Berry, tying him to a bumper and dragging him around. The judge was clear that he believed that the defendant would recidivate, and that can only be deterred by a long sentence. No prior punishment had deterred him at all, and the threats were getting worse and worse and ultimately culminated in violence. So the sentence by the judge in the threat case was certainly justified, and in addition, the consecutive sentence imposed by the judge in the assault case was certainly justified as well. Again, that judge saw this building of animosity and building of likelihood that the defendant would actually carry out his threats, and consequently the judge was justified in imposing the sentence that he did. I find it interesting that both of these judges remarked that they had seen nothing like this defendant in their long histories of being judges. If I may just point out one mistake that I made in the brief on page 61, I should have said that the sentence would be justified even without reference to the assault case. I think I said a threat case in the brief. With respect to the other two matters that my opponent has raised with respect to the pro se matter and the not being in the courtroom, I haven't heard what harm he suffered from these either, so I don't really understand why these are being even raised at this point. But at any rate, I think the judge has discretion over both matters, clear discretion to control the behavior that happens in the courtroom, and so I believe both of those arguments should be rejected. If there are no further questions, I would ask that the sentences and judgments be affirmed. Thank you, Mr. Clark. Anything further, Mr. Patton? Your Honor, as the Supreme Court made clear in Feretta v. California, the prejudice to the improper denial of a request to proceed pro se is that the person has been denied their right to represent themselves, and that is not amenable to harmless error review. And the prejudice one serves from being forced to stay in the courtroom when you don't want to is the threat against your personal dignity. Even though you're charged with an offense, you still have your rights, and you can waive your rights. And Mr. Mabee was prejudiced by the judge, forcing him to stay in the courtroom with a lawyer that had actively started arguing against Mr. Mabee. And then Mr. Mabee ends up being taken down and handcuffed and tackled in front of the jury. With regard to the 404b issue, I would like to stress that in trying to persuade the court to reject any idea that when an evidentiary objection is made on the record, and the judge rules on that on the record, that the defense counsel or whoever has the objection, loses the objection, has to then make an exception to that and say, Judge, would you please explain your denial to me in more detail? That is not the law. The Lawson case was a unique situation where the parties agreed to do things off the record. And for all the court knew, the district judge had given an extremely detailed and lengthy explanation for his ruling, and it's just the defense counsel didn't ask that that be put on the record. That's not the situation here. And the law is not that a party who makes an objection, gets a ruling from the judge, is then required to ask the judge to, in effect, make the right record. Because what is the defendant going to say other than, Judge, that's wrong? The judge doesn't want to hear that, especially if you're in the middle of a trial. You're likely to get smacked down for trying to argue things in the presence of the jury. Well, this is in the context, though, of an issue that was litigated extensively in Lemony. We're not talking about just the isolated context of individual exceptions or individual objections that are made at trial with issues that were not litigated in Lemony. But even when it's done on Lemony, once the judge issues a written order saying, this is my ruling, the party that loses is under no burden to say, Judge, would you issue a supplemental opinion, please, giving more details to your reasoning because you did a bad job in explaining your reasoning. That's not likely to meet with a very positive response from the district judge. I don't think that that is reasonable to put that requirement on a litigant to preserve their evidentiary rulings. It is the judge's duty to issue a ruling and give enough explanation so that it can be reviewed by this court. The litigant's job is to file an objection, to say, I object to this. It is then the district court's job to rule on it and give sufficient explanation so that that can be reviewed. And it's not the litigant's job to try and backstop the judge, especially the litigant that lost, to backstop the judge to say, Judge, would you do a better job of explaining this so you can decrease my chances of winning on appeal? It's an adversary system. The government could have said, you know, Your Honor, we'd like to have a little bit more of a detailed explanation. And I've had prosecutors do that before, usually when they're trying to save something that the district judge has done. It's like, Judge, do you really mean to say X, Y, and Z? So, yeah, I can see that. But to require the side that has made the objection and lost go back to the judge and say, Could you give a more detailed explanation? Is not the way the rules of evidence work. And Rule 52 works for how you preserve an evidentiary objection. Thank you. Thank you very much. The case is taken under advisement and the court will be in recess.